THE STATE OF KANSAS v. M. A. WILSON.

No. 13,121.   (71 Pac. 849.)

SYLLABUS BY THE COURT.

1. BURGLARY AND LARCENY—*Description of Money.*   An information for burglary and the larceny of $1933, in which the money taken is alleged to consist of about $1400 in bank-bills, treasury notes, gold and silver certificates, about $380 in gold coins, about 115 one-dollar silver pieces, and the remainder of the $1933 to consist of subsidiary coins—all current, lawful money of the United States—is sufficient in charging the value of the property taken.

2. ———— *Instruments and Tools as Evidence—Instructions.* Instrumentalities which it was claimed by the state had been employed in the commission of a crime were produced at the trial and used by witnesses for the state before the jury to illustrate their evidence and explain the manner in which the crime might have been committed, but when offered in evidence they were excluded because not properly identified and connected with the commission of the offense.   *Held,* that the court erred in refusing to instruct the jury to disregard such instrumentalities and all evidence based thereon in determining the guilt or innocence of the defendant.

Appeal from Rawlins district court; JOHN R. HAMILTON, judge.   Opinion filed March 7, 1903.   Reversed.

*C. C. Coleman*, attorney-general, *J. H. Briney*, county attorney, *J. P. Noble*, and *Fred. Robertson*, for The State.

*Albert Hemming*, *Dempster Scott*, and *John E. Hessin*, for appellant.

The opinion of the court was delivered by

POLLOCK, J. : About four o'clock on the morning of December 22, 1901, the safe in the office of the county treasurer of Rawlins county, at Atwood, was blown open, and a large sum of money, in the aggregate about $1933, was taken therefrom. Appellant was arrested, charged, tried, and convicted of this offense, and appeals to this court.

The evidence is entirely circumstantial. Appellant, a married man, stayed at night on a farm close to the town. His family lived in a building not far from the scene of the crime. After the commission of the crime a reward was offered for the apprehension and conviction of the offender. A searching party found on the farm of appellant, under a tool-box, a wrench and brace, also, in a stream of water, a crowbar, of which instruments much use was made by the state on the trial. There was also evidence of some one's running to the rooms occupied by the family of appellant about the time the offense is alleged to have been committed ; evidence of a trip made by appellant to Nebraska after the offense was committed, and his there registering at hotels under an assumed address ; of excavations made in a plum thicket on appellant's farm ; of his meeting with strangers after the commission of the offense at a hotel in Colby ; of a secret hiding-place on the farm of appellant. In the safe burglarized there was a Columbian coin. There was also evidence that appellant exhibited, after the date

of the commission of the offense, a Columbian coin, and evidence of other facts and circumstances claimed to be of a suspicious nature and tending to connect appellant with the commission of the offense.

It is first insisted by counsel for the state that this appeal must be dismissed for want of a proper certificate to the bill of exceptions found in the record. We are inclined to think, however, that the same is sufficient.

Many grounds of error are specified and called to our attention in argument. It is first insisted that there was error in refusing to quash the information for the reason that it fails to allege the value of the money taken. The information charges the larceny of $1400 in bank-bills, treasury notes, gold and silver certificates, about $380 in gold coins, 115 silver dollar pieces, and the remainder of the amount taken in subsidiary coins—all current, lawful money of the United States. This, we think, sufficient; especially as judicial notice will be taken of the fact that the gold dollar is the unit of value under the monetary system of this government. (*The State v. Eastman*, 62 Kan. 353, 63 Pac. 597.)

Again, it is insisted that the court erred in failing to define, for the information of the jury, the term, "reasonable doubt," used in the instructions. This term is so simple, clear, and free from ambiguity or technical learning, that it best defines itself. Any attempt to define is liable to prove more confusing to the mind of the average juror than the use of the term without definition. (*The State v. Davis*, 48 Kan. 1, 28 Pac. 1092; *The State v. Kearley*, 26 id. 77; *The State v. Bridges*, 29 id. 138.)

Instruction 13 in the charge of the court to the jury reads as follows:

"Where evidence that would rebut or explain cir-

cumstances of a grave or suspicious nature is peculiarly within the defendant's knowledge and reach, if you find there are such facts and circumstances in this case, and if you shall further find that defendant has made no effort to procure such evidence, then you may properly take such facts into consideration in determining the defendant's guilt or innocence."

The defendant did not offer himseif as a witness in his own behalf.   In instruction 15½ the court charged the jury as follows :

"The court instructs the jury that, while the statute of this state provides that a person charged with crime may testify in his own behalf, he is under no obligation to do so, and the statute expressly declares that his neglect to testify shall not create any presumption against him."

It is earnestly insisted by counsel for appellant that instruction No. 13 nullifies that portion of section 215 of the criminal code (Gen. Stat. 1901, § 5657) which provides :

"That the neglect or refusal of the person on trial to testify, or of a wife to testify in behalf of her husband, shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case, nor shall the same be considered by the court or jury before whom the trial takes place."

As the instruction given is in substance the same as that given in *The State v. Grebe*, 17 Kan. 458, which was approved by this court, and as that case was in its main features not unlike the case at bar, we are not inclined to hold it to be prejudicial error.   It does, however, trench dangerously near error in a case in which the evidence is wholly circumstantial.

There is one ground of error more serious in its nature which we shall now consider.   It arises upon the introduction of testimony.   There was found upon

the farm of appellant, after the commission of the offense, a wrench, a brace, and a crowbar. How these implements came there was not shown. Whether they were the property of appellant or were there placed by appellant is not shown, except from the inference to be drawn from their location when found. Upon the trial they were produced in court, and used by P. Mostan, a detective, of Omaha, a witness for the state, in part, as follows :

"Ques. What is the habit of burglars as to the use of tools, say a wrench and a crowbar and the ordinary tools used for this purpose ? Ans. Well, a professional burglar hardly ever carries anything with him except a drill and the explosives, and he gets the other tools in the locality in which the crime is committed.

"Q. What is usually done with these commonplace tools, such as a crowbar and a wrench ? A. My experience has been that they leave them at the scene of the crime.

"Q. I hand you this wrench and ask you to examine it carefully and say whether you have examined it before ? A. Yes, sir ; I have seen this wrench before.

"Q. I will ask you to say whether there are any indications on that wrench to show that it was used in the operation of a burglary, such as you have described ? A. Well, I could not say positively that it was used in the operation of a burglary, but it has had pretty hard usage, and the manner in which it sets there it is about the size of the bolt or screw that was used in the jack or clamp.

"Q. By the burglars ? A. Yes, sir.

"Q. What do you mean by being set ? A. You cannot work it. It has been broken, but that is the manner in which it was worked.

"Q. You cannot change that ? A. No, sir.

"Q. Are there any marks or indications to show how that may have been used ? A. There are some marks

The State v. Wilson.

along here that appear to be recently marred and there is an impression on these threads.

"Q. I hand you this brace, captain, and ask you to state to the jury whether that is such a brace as may be used in the opening of a safe such as you have described? A. Yes, this brace could be used in drilling a hole of that character. It is a brace, as I understand it, used by blacksmiths and wagon-makers for heavy work.

"Q. Now, I will ask you to take this bar, captain, and say to the jury whether there are any marks that would indicate that that bar has been used in the opening of a safe similar to this one? A. Yes, sir, there are.

"Q. Please indicate to the jury what those marks are. A. They are marks on the bar.

"Q. Point to them so the jury can see. A. There are some marks on the bar, on both sides, all along there.

"Q. Which are the marks? A. Here they are."

H. F. Marshall also testified as follows:

"Ques. Was there room on the top of that safe for a person to stand and use the bar from the top of this door? Ans. Yes, sir.

"Q. Do you remember when you made the examination of that bar at that time whether you discovered any foreign substance on the bar itself? A. I did.

"Q. What was it? A. It was the color of brass.

"Q. Did you observe any foreign substance, and state what it was? A. It seemed to be some of the filling of the safe.

"Q. What do you mean by the filling of the safe? A. White substance, etc."

There is much evidence of a similar character in the record. A portion of this evidence was received over the objection of counsel for defendant.

The crowbar, wrench and brace referred to by the witness were thereafter offered in evidence by the state, and excluded by the court because not suffi-

ciently identified. The defendant then requested the following instructions with reference thereto, which were refused :

"1. You are instructed that you must not take into consideration any measurements, marks or indentations made upon or about the safe or any attachment to it in connection with the crowbar, monkey-wrench or brace which were exhibited before you, during the trial, in determining whether the defendant is guilty or innocent of the crime charged.

"2. I instruct you that the crowbar, brace, monkey-wrench and silver coin that were exhibited before you during the trial were not admitted in evidence, and they should not be taken into consideration by you in any manner in arriving at the guilt or innocence of the defendant.

"3. I instruct you that you must not take into consideration the crow-bar, brace, monkey-wrench and silver coin that were exhibited before you during the trial in determining whether the defendant is guilty or innocent of the crime charged against him in the information."

The court in its charge to the jury did not refer to the testimony given in reference to these instruments produced, the marks upon them, or the purposes for which they might have been used in the commission of the crime. Nor was this evidence withdrawn from the consideration of the jury by an instruction to disregard it. It is quite clear that, if these instruments had been properly identified as used in connection with the commission of the crime, and defendant's possession or ownership of them had been shown, their reception in evidence and the use made of them by witnesses for the state, in the way of explanation and illustration before the jury, would have been proper. But as these instruments were in their nature harmless and well adapted to an honest use, and as they were not identified as instruments in the pos-

The State v. Wilson.

session of, or owned by, the defendant, and as the evidence wholly failed to establish their use in connection with the commission of the offense, they were properly excluded when offered in evidence, and being thus properly excluded, all evidence in connection therewith and their use by the witnesses and counsel for the state also should have been, by proper instructions, withdrawn from the consideration of the jury.   The same is true of the Columbian coin to which like reference was made.   The better practice in such cases as this, where instrumentalities claimed to have been used in the commission of an offense are sought to be used for the purpose of illustrating testimony before the jury, is first to require their proper identification ; but if this is not required, and such use is made of them upon the assumption or promise of the state that it will thereafter make proper identification, and this is not done, not only should the instrumentalities themselves be excluded from the evidence, as was done in this case, but the jury should also be instructed to disregard them, and all evidence based thereon, in determining the guilt or innocence of accused.

In failing so to instruct in this case error was committed, for which the judgment must be reversed and a new trial ordered.

All the Justices concurring.